UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| **FARES ALQUDAH;** | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **U.S. DEPARTMENT OF HOMELAND SECURITY;** | ) | No. 26-cv-774 |
| **U.S. CITIZENSHIP AND IMMIGRATION SERVICES;** | ) | |
| **MARKWAYNE MULLIN;** | ) | |
| Secretary of the Department of Homeland | ) | COMPLAINT FOR |
| Security; | ) | INJUNCTIVE AND |
| **JOSEPH EDLOW;** | ) | MANDAMUS RELIEF |
| Director of U.S. Citizenship and Immigration | ) | |
| Services; and, | ) | |
| **JOHN PRUHS;** | ) | |
| Field Office Director of the U.S. Citizenship and | ) | |
| Immigration Services Milwaukee Field Office. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>INTRODUCTION</u>

1. The Plaintiff brings this mandamus action to compel the Defendants to complete the adjudication of Fares Alqudah's Petition to Remove Conditions on Residence ("I-751") and Application for Naturalization ("N-400") without further delay. The I-751 was filed on May 26, 2017, and has been pending since that date. The N-400 was filed on July 12, 2024, and has been pending since that date.

2. The Plaintiff's applications remain within the jurisdiction of the Defendants, who have improperly withheld action on the applications for an unreasonable period of time to the detriment of the Plaintiff.

1

**THE PARTIES**

3.  Plaintiff Fares Alqudah ("Mr. Alqudah") resides in Oak Creek, Wisconsin. He filed an I-751 petition and later filed an N-400 application.

4.  Defendant U.S. Citizenship and Immigration Services ("USCIS") is an agency within Defendant Department of Homeland Security ("DHS"). The DHS, through USCIS, is responsible for the adjudication of I-751s and N-400s.

5.  Defendant Markwayne Mullin is the Secretary of the DHS. He is the administrative official ultimately responsible for the adjudication of the I-751 and N-400 that the Plaintiff has filed. He is sued in his official capacity as the Secretary of the Department of Homeland Security, the executive office with authority over USCIS.

6.  Defendant Joseph Edlow is the Director of USCIS. He is responsible for the adjudication of the type of application that Plaintiff has filed. He is being sued in his official capacity.

7.  Defendant John Pruhs is the Field Office Director of the USCIS Milwaukee Field Office. He is the executive officer with authority over the department where the I-751 and N-400 are currently being adjudicated. He is sued in his official capacity.

**JURISDICTION**

8.  This is a civil action brought pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1361 (action to compel an officer of the United States to perform his duty), to redress the deprivation of rights, privileges, and immunities secured to Plaintiff, by which statutes jurisdiction is conferred, to compel Defendants to perform a duty that Defendants owe to Plaintiff. Jurisdiction is further conferred by 5 U.S.C. §§ 555(b) and 704, the Administrative Procedure Act ("APA").

9. Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." The Code of Federal Regulations makes it clear that USCIS has a mandatory and affirmative duty to adjudicate a properly filed I-751; see generally 8 C.F.R. § 216. The Code of Federal Regulations further makes it clear that USCIS has a mandatory and affirmative duty to adjudicate a properly filed N-400; see generally 8 C.F.R. §§ 334-335.

10. Section 242 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252, does not deprive this Court of jurisdiction. INA § 242(a)(2)(B) provides that no court shall have jurisdiction to review either (i) "any judgment regarding the granting of" various forms of relief from removal, or (ii) "any other decision or action . . . the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security." Because issuing a decision on an I-751 or N-400 is neither a judgment regarding the granting of relief from removal nor a decision or action that is specified to be in the sole discretion of the Attorney General or the Secretary of Homeland Security, the Court retains original mandamus jurisdiction over this claim. *See Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1136-1139 (D. Ariz. 2008) ("Numerous district courts . . . which have addressed this specific issue overwhelmingly conclude that . . . the pace at which USCIS processes . . . applications is nondiscretionary and that [8 U.S.C. § 1252(a)(2)(B)(ii)] does not bar judicial review."); *see also Liu v. Novak*, 509 F. Supp. 2d 1, 4-7 (D.D.C. 2007). Through this complaint, Plaintiff is not challenging a decision on his applications, as no decisions have yet been made. Rather, Plaintiff seeks an order compelling Defendants to

take action and render a decision on both the I-751 and N-400. The relief sought is not discretionary but is, by definition, a mandatory duty. *See In re Sealed Case*, 151 F.3d 1059, 1063 (D.C. Cir. 1998); *see also First Federal Savings and Loan Association of Durham v. Baker*, 860 F.2d 135, 138 (4th Cir. 1988).

11. The APA also requires USCIS to carry out its duties within a reasonable time. 5 U.S.C. § 555(b) (providing that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it"). If the agency fails to render a decision within a reasonable time, the Court has authority under 5 U.S.C. § 706(1) to compel the agency to do so. 5 U.S.C. § 706(1) (conferring power on the U.S. District Courts to compel agencies to perform "action unlawfully withheld or unreasonably delayed"). As set forth below, the delay in rendering a decision on Plaintiff's petition and application is unreasonable.

12. Finally, this Court may grant relief under 28 U.S.C. § 2201, the Declaratory Judgment Act, declaring Defendants' failure to act on Plaintiff's I-751 and N-400 to be arbitrary and capricious, unconstitutional, and a violation of the INA, the federal regulations, and the APA. See *Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Peoples v. U.S. Dep't of Agric.*, 427 F.2d 561, 565 (D.C. Cir. 1970). See also 5 U.S.C. §§ 555(b), 706(1), 706(2).

<u>**VENUE**</u>

13. Venue is proper in this District under 28 U.S.C. § 1391(e), because the Defendants operate within this district and this is an action against officers and agencies of the United States in their official capacities, brought in the district where the Plaintiff resides and where a substantial part of the events and omissions took place.

4

## FACTUAL BACKGROUND

14. On June 6, 2012, Mr. Alqudah received the immigration status of conditional permanent resident, which is given to someone inside the United States who has properly applied for adjustment of status based on an approved I-130 from a spouse with whom the applicant has been married less than two years. The conditional permanent resident status is valid for two years from the date of the approval. Therefore, Mr. Alqudah had conditional resident status valid from June 6, 2012 to June 6, 2014.

15. If still married to and living with the petitioning spouse, the conditional permanent resident must file an I-751 during the 90-day period immediately preceding the expiration of conditional residence. Alternatively, if divorced from the petitioning spouse, the conditional permanent resident may file an I-751 at any time. Mr. Alqudah first filed an I-751 with receipt number WAC1416100395 on March 10, 2014. That petition was dismissed due to the couple's divorce. Mr. Alqudah then refiled a new I-751 requesting a waiver of the joint filing requirement based on the divorce. That refiling was done with receipt number WAC1723800003 on May 26, 2017.

16. Over three and a half years after filing the second I-751, Defendants finally interviewed Mr. Alqudah on January 29, 2021 to discuss his marriage and relationship in connection with the I-751 that was filed, and have not requested any further information or evidence from Mr. Alqudah.

17. After continuing to wait for years, Mr. Alqudah submitted an Application for Naturalization (N-400) on July 12, 2024, which he was permitted to do as five years had passed since his initial residency was approved.

18. USCIS scheduled Mr. Alqudah for an interview for his naturalization application on March 31, 2025, but three days before the interview canceled the interview. As of this writing, a new interview has not been scheduled either for the I-751 or N-400.

19. In fiscal year 2017, USCIS posted that the median processing time for an I-751 was 11.8 months. https://egov.uscis.gov/processing-times/historic-pt-2 (last visited April 30, 2026). According to their own records on the same website, in fiscal year 2018, the median processing time for an I-751 was 15.9 months, 14.9 months in 2019, 13.6 months in 2021, 18.2 months in 2022, 20.8 months in 2023, 23.5 months in 2024, 21 months in 2025, and currently is at 22.3 months. No data is posted for 2020.

20. Mr. Alqudah's I-751 has been pending over 107 months as of the filing of this complaint.

21. In fiscal year 2024, USCIS posted that the median processing time for an N-400 was 5.0 months. https://egov.uscis.gov/processing-times/historic-pt (last visited April 30, 2026). According to their own records on the same website, in fiscal year 2025, the median processing time for an N-400 was 5.6 months, and currently it is 6.4 months.

22. Mr. Alqudah's N-400 has been pending over 21 months as of the filing of this complaint.

23. According to USCIS case status, there has not been an update for the I-751 filing since October 26, 2021. According to USCIS case status, there has not been an update for the N-400 filing since March 28, 2025 when the interview was canceled.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

24. No exhaustion requirements apply to the Plaintiff's complaint for a writ of mandamus. The Plaintiff is owed a duty, the adjudication of his properly filed I-751 and N-400, which have been duly filed with USCIS. Defendants have unreasonably delayed and failed to

adjudicate the Plaintiff's I-751 for almost nine years since receiving the petition, and have unreasonably delayed and failed to adjudicate the Plaintiff's N-400 for almost two years since receiving the application. The Plaintiff has no other adequate remedy available for the harm he seeks to redress – the failure of USCIS to process his I-751 and N-400 in a timely manner.

## CLAIMS

25. A mandamus plaintiff must demonstrate that: (i) he or she has a clear right to the relief requested; (ii) the defendant has a clear duty to perform the act in question; and (iii) no other adequate remedy is available. *Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002). Mr. Alqudah meets these criteria.

26. First, Mr. Alqudah has a clear right to the relief requested, as he has fully complied with all the statutory and regulatory requirements for filing an I-751. Defendants have willfully and unreasonably failed to make a decision or provide any information about the status of the petition, sometimes misleading Mr. Alqudah by stating that the petition was within processing times when it was not, and other times simply stating that it remains pending with USCIS. The same is true regarding Mr. Alqudah's N-400 application. Defendants are required by statute and regulation to make a decision on Plaintiff's applications. *See* 8 U.S.C. § 1446; 8 C.F.R. §§ 316.1-316.14. Moreover, pursuant to 5 U.S.C. §§ 555(b) and 702 (APA), "[w]ith due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency shall proceed to conclude a matter presented to it." (Emphasis added).

27. Second, Defendants have a clear duty to act upon and make a decision on Mr. Alqudah's I-751 and N-400. This duty is owed under the INA and the federal regulations. *See* 8 U.S.C. § 1186a; 8 C.F.R. §§ 334-335. See also *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992) ("When the suit is one challenging government action or inaction, [and] the plaintiff is himself an object of the action (or forgone action) at issue, . . . there is ordinarily little question that the action or inaction caused him injury, and that a judgment preventing or requiring the action will redress it."); *Manmohanjit Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007) (noting that regulations reflect a nondiscretionary duty to process applications for immigration benefits).

28. Congress created a guideline of adjudicating immigration benefits within 180 days under 8 U.S.C. § 1571(b). Defendants have far exceeded this Congressional benchmark, their own estimated processing times, federal regulations, and Congressional guidelines.

29. Third, the Court should compel Defendants to quickly issue a decision on Mr. Alqudah's long-pending petition and application, because no other adequate remedy is available to Mr. Alqudah. Defendants have inexplicably and unreasonably failed to perform their clear duty to act. Despite Mr. Alqudah's attendance at an interview and filing of all necessary documentation, no decision or explanation for the continued delay has been issued. To the extent any administrative remedies were available, Mr. Alqudah has pursued them without obtaining adjudication, and mandamus action is appropriate. 28 U.S.C. § 1361; 28 U.S.C. § 1331.

30. A mandamus action is also appropriate because Defendants have failed to act within a reasonable period of time. *Saleem v. Keisler*, 520 F. Supp. 2d 1048, 1055 (W.D. Wis. 2007) (holding that the APA requires the government to act within a reasonable period of time).

31. Generally, in determining what is "unreasonable," courts may look to a variety of factors, including any Congressional guidance on what it considers to be reasonable, internal operating procedures established by the agency, processing times in similar cases, the source of the delay, and the facts of the particular case. See *TRAC v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). A court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Saleem*, 520 F. Supp. 2d at 1058-59. The delay in making a decision on Plaintiff's petition and application extends well beyond Congress's guideline of 180 days for immigration benefits under 8 U.S.C. § 1571(b) and their own average processing times for both I-751 applications and N-400 applications for each of the preceding eight fiscal years and two fiscal years respectively. Considering all these factors, Defendants' delay is plainly unreasonable.

32. Mr. Alqudah is entitled to action on his I-751, because an unreasonable amount of time has passed since the petition was filed and since he was interviewed. He is further entitled to action on his N-400, because an unreasonable amount of time has passed since filing without USCIS providing an interview. Defendants have failed to carry out the adjudicative and administrative functions delegated to them by law, to the ongoing harm and prejudice of Mr. Alqudah.

9

33. Defendants' delay is without justification and has forced Mr. Alqudah to resort to this Court for relief, and Mr. Alqudah is entitled to attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(2).

**RELIEF REQUESTED**

Plaintiff requests that this Court grant the following relief:

(A) Compel Defendants and those acting under them to take all appropriate action to adjudicate Plaintiff's I-751 and N-400 without further delay;

(B) Retain jurisdiction during the adjudication of the I-751 and N-400 to ensure compliance with the Court's orders;

(C) Award Plaintiff his attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"); and,

(D) Grant such other relief as is appropriate.

Dated this 30th day of April, 2026.

s/ Theodore Chadwick
Theodore J Chadwick
Wisconsin SBN 1095431
Attorney for Plaintiff
Fernandez Chadwick & Crouse
3920 W. National Ave.
West Milwaukee, WI 53215
Phone: (414) 643-5676
teddy@fccimmigrationlaw.com